IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

MAR 0 6 2006

Michael N. Milby, Clerk

| | | |
|---|---|---|
| KRISTEN E. JONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| LEE P. BROWN, CITY OF HOUSTON, | § | CIVIL ACTION NO. H-03-2286 |
| SHIRLEY DELIBERO, *et al.* | § | |
| | § | |
| Defendants. | § | |

# DEFENDANT METROPOLITAN TRANSIT AUTHORITY'S BRIEF IN OPPOSITION TO PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

KRISTEN E. JONES, §
§
Plaintiff, §
§
v. § CIVIL ACTION NO. H-03-2286
§
LEE P. BROWN, CITY OF HOUSTON, §
SHIRLEY DELIBERO, *et al*. §
§
Defendants. §

**DEFENDANT METROPOLITAN TRANSIT AUTHORITY'S BRIEF IN OPPOSITION
TO PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF**

**I.**  **Summary of the Argument**

**II.**  **Arguments and Authorities Pertaining to Standing, Mootness
and Statute of Limitations**

    A.    Jones lacks standing to assert claims.
    B.    Jones lacks standing to bring claims pertaining to pedestrian controls.
    C.    Plaintiff's complaints are moot.
    D.    Plaintiff's claims are barred by the statute of limitations.

**III.**  **Discussion of METRO's Obligation, if any, when it creates a
"disturbed area" by installing a traffic pole**

    A.    Analysis of Applicable Statutes and Case Law
    B.    Analysis of Plaintiff's Argument
    C.    Response to Plaintiff's Position Regarding Paths to Pedestrian Controls
    D.    Response to Plaintiff's Argument Regarding Joint and Several Liability.

**IV.**  **Conclusion**

**V.**  **Attachments**

    1.    Pertinent Transcript Excerpts
    2.    Deposition Excerpts for Kristen Jones
    3.    Deposition Excerpts for Loyd Smith
    4.    October 23, 2003 Hearing Excerpts for Kristi Thomas

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KRISTEN E. JONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| LEE P. BROWN, CITY OF HOUSTON, | § | CIVIL ACTION NO. H-03-2286 |
| SHIRLEY DELIBERO, *et al*. | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT METROPOLITAN TRANSIT AUTHORITY'S BRIEF IN OPPOSITION
TO PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF**

COMES NOW Defendant Metropolitan Transit Authority (METRO) and files this, its

brief in opposition to Plaintiff Kristen Jones's (Jones) request for injunctive relief, and in support

would show the following:

### I. SUMMARY OF THE ARGUMENT

1.  Jones lacks standing to assert the stated claims. At all but three

    locations plaintiff has no knowledge of conditions or barriers, and has

    no intention of using the facilities. At the remaining three locations

    Jones is unable to show injury, that violations by METRO caused her

    injuries, if any, and/or that those injuries can be redressed by court

    action. In addition, significant subsequent construction has occurred, or

    is occurring, at those intersections, including work affecting the

    accessible features of which Jones complains, rendering the issues

    moot. Finally, all violations caused by RCTSS work alleged by Jones,

    even if true, were committed more than two years prior to the filing of

    suit. Jones provided no evidence that she discovered the violations

within two years of filing suit. Because Jones has failed to assert any violation committed within the two years prior to bringing suit, the continuing violation doctrine is not triggered, and her claims against METRO are barred by the statute of limitations.

2.     METRO's obligation when it creates a "disturbed area" by installing a traffic signal pole is that it must, to the maximum extent feasible, render the altered portion of the altered facility accessible to the disabled. If METRO's work does not disturb other facilities, such as sidewalks or ramps, it need not perform any remediation on those facilities.

## II. ARGUMENTS AND AUTHORITIES PERTAINING TO STANDING, MOOTNESS, AND STATUTE OF LIMITATIONS[1]

1.     METRO raised the issues of standing, mootness, and statute of limitations in a motion for summary judgment on October 6, 2003. In denying METRO's motion to dismiss based on lack of standing, the court stated "Jones has sufficiently pleaded facts that, if proved, would show injury."[2] The court denied METRO's motion to dismiss based on mootness because METRO did not meet its burden of showing there is no reasonable expectation that the alleged violation will recur, and that interim relief or events have "completely and irrevocably eradicated the effects of

---

[1] Defendant will refer to the following documents throughout the pleading:
**Evidentiary Hearing Transcript (EH Page:Line.) Court's Memorandum and Order signed September 29, 2004 (Memorandum); Court's Order Following Evidentiary Hearing (Order); Kristen Jones deposition testimony from August 3, 2004 (Jones Depo.), Transcript of Kristi J. Thomas's testimony from the hearing on the request for a preliminary injunction from October 27, 2003 (Thomas Transcript); Loyd Thomas's deposition testimony from August 12, 2003 (Smith Depo).**

[2] Memorandum p. 20.

the alleged violation."[3] The court stated it could not say as a matter of law that Jones's claims against METRO are moot.[4]

2.      While fully respecting the court's previous rulings, METRO believes that now, after the presentation of all the evidence relating to the pertinent issues, and in light of new information which vastly narrows the scope of Jones's complaints, that the issues must be reconsidered. METRO further asserts that Jones did not prove what she plead sufficiently to show standing, and that METRO can now meet its burden to show that the alleged violations, even if true, will not occur again, and that interim events have eradicated the effect of those violations.

**A.     Jones lacks standing to assert claims.**

3.      Jones's expert, Ken Otten provided METRO with a compilation of alleged Americans With Disabilities Act (ADA)[5] violations on June 10, 2005. That report contained complaints about 80 intersections. This represented fewer than half of the list of RCTSS intersections provided to Plaintiff. Within that report were 925 individual complaints. At the evidentiary hearing, Jones stipulated that she had personal knowledge of only the conditions at the intersections to which she had testified on direct examination in the hearing. Further, she stipulated that she has no current plans to visit or use any other facilities. (EH 131:20-132:9) The only RCTSS-related intersections discussed during that examination were San Felipe at Voss, Kirby at North Braeswood, and Stanford at Alabama. (EH 113-125, 110-113, and 57:68, respectively.)

4.      Article III, Section 2 of the United States Constitution limits the federal courts' jurisdiction to actual cases and controversies. In order to have jurisdiction to bring suit in a federal court, a plaintiff must show that she sustained an actual injury-in-fact, and that her injury

---

[3] Memorandum p. 22, citing *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 874 (5th Cir. 2000).
[4] Memorandum p 24.
[5] 42 U.S.C §12101, *et seq.*

was caused by the complained-of conduct of the defendant. Plaintiff must also show that her injury will be redressed by the requested court action.[6] The injury alleged must be actual or imminent, and not merely hypothetical or speculative.[7] In the context of a case brought under the ADA, this means that a plaintiff must have attempted to use a facility and been unable to do so, or desire to use the facility, but not attempted to do so because of obvious futility.[8] A vague statement of an intent to return to a place "someday" is insufficient.[9] The plaintiff bears the burden of proving the conditions required to establish standing.[10]

5.      The court stated in its September 2003 order that the traffic poles installed or replaced under the RCTSS project were "facilities."[11] As such, each traffic pole is being considered separately.[12] Accordingly, if Jones fails to cite an injury caused by conditions at a particular traffic pole, that facility is irrelevant to the suit brought by her, particularly absent a showing of any systemic or widespread violations. Further, the court has no jurisdiction to consider the conditions at that facility, as there has been no injury associated with the conditions at that facility. As a result of Jones's lack of knowledge of conditions at all but three intersections, and her lack of intention to use those other facilities, she has no standing to assert complaints pertaining to them.

6.      Jones mentioned the intersection of Stanford and West Alabama in her testimony at the evidentiary hearing. Specifically, she briefly discussed the northwest, northeast and southeast

---

[6] *James v. City of Dallas*, 254 F.3d 551, 563 (5th Cir. 2001); *Steger v. Franco, Inc.*, 228 F.3d 892 (5th Cir. 2000).
[7] *Pub. Citizen, Inc. V. Bomer*, 274 F.3d 212, 217 (5th Cir. 2001); *Lujan Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992); *Steger*, 228 F.3d at 892.
[8] *Steger v. Franco*, Inc. 228 F.3d 889, 892 (8th Cir. 2000); followed by *Ass'n for Disabled Americans v. 7-Eleven, Inc*, 2002 U.S.Dist. Lexis 6163. (5th Cir. 2002).
[9] *Lujan*, 504 U.S. at 564.
[10] See *Lujan* at 561, 112 S.Ct. at 2136 (1992); *Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*, 95 F.3d 358, 361-362 (5th Cir. 1996).
[11] Memorandum 47-48.
[12] Plaintiff lodged no complaints related to wholly new signal poles.

locations. (EH 57-69) No complaint was made against METRO during the testimony.[13] Ms. Jones complained of lip and transition problems in relation to ramps, but there was no mention of traffic signal poles or other METRO work. Further, in Jones's deposition of August 4, 2003, Jones only complained of the lack of barriers around the construction area at that site. When asked if she had additional complaints for that location, she said "outside of that, I think it's okay. I'm going to go with, I think it's okay."( Jones Depo p. 358:25-361:4) The court ruled in its order that complaints regarding barriers or signage under the MUTCD such as those brought by Jones did not confer a private right of action.[14] That complaint, therefore, is insufficient to provide Jones with standing as to this facility.

7.     Ken Otten did not include any complaints about Stanford at Alabama in his report against METRO, nor did he testify as to any violations there. In fact, as Plaintiff's counsel stated at the evidentiary hearing, the only testimony relating to structural problems at that location was Plaintiff's former expert Kristi Thomas. (EH 64:22-65:2) Even that testimony differed from the complaints offered at the evidentiary hearing.[15] Ms. Thomas's complaint, however, is irrelevant without a complaint from Jones, which was never made. If such a complaint were to be made at this late date, it would be without having allowed proper notice to METRO to address that complaint. Further, a plaintiff's standing is determined based on injuries sustained as of the filing of the suit. If the injury arises after the filing of suit, it is not sufficient to confer standing.[16] Jones's lack of injury at Stanford and Alabama deprives her of standing to assert complaints at this intersection.

---

[13] Plaintiff initially discussed the light at the northwest corner but withdrew that issue. EH 66:16-66:20.
[14] Memorandum p. 36.
[15] Thomas Transcript Depo. 12-15.
[16] *Steger*, 228 F.3d at 892, citing *Park v. Forest Serv.*, 205 F.3d 1034, 1039 (8th Cir. 2000).

8.    As stated above, the third prong of the case or controversy test requires that the plaintiff's injury have been caused by the defendant.[17]    In this case, RCTSS work at the two remaining intersections work was completed at least ten years ago.  The work at San Felipe and Voss was performed in the summer of 1994. (EH 715:19) Loyd Smith testified that since that time, the sidewalk at that location has been lowered, and other significant construction work had been performed at that intersection by an entity other METRO. (EH 713:16-717:19)  Jones herself testified that new ramps had been installed recently. ( EH 139:5-12) Despite this knowledge on her part, Jones still asserted complaints against METRO with regard to those ramps.  Because there has been significant, recent non-METRO and non-RCTSS construction at this intersection, it can only be concluded that the injury she now suffers, if any, is the result of the recent construction and not the RCTSS work a decade ago.  Therefore, Jones has failed to provide any support for a finding that her injuries with regard to this intersection were caused by METRO, and thus failed to establish standing.

9.    The RCTSS work at Kirby and North Braeswood was performed in 1995. (EH 710:9-17) Ms. Jones complained about the ramps at the northwest and southeast corners, and the pedestrian controls at both corners.(EH 110:14-113:5)  The evidentiary hearing was the first notice METRO had that Ms. Jones was alleging injury relating to the pedestrian controls at the southeast corner. She made no complaint about a traffic pole disturbing a sidewalk or ramp because the poles *didn't* disturb any other facilities such as sidewalks or ramps.  Loyd Smith testified that METRO did not install the ramps. (EH 711:21-712:20) Photos taken just prior to the evidentiary hearing showed burlap covering the pedestrian signals, rendering them unusable.(EH 712:1-713:5) (MTA Exh. 32a-g)  Plaintiff cannot show standing at this intersection in light of METRO's lack

---

[17] *Steger*, 228 F.3d at 893.

of disturbance or installation of the sidewalks and ramps, and the universally unusable pedestrian signals.

10.     Ms. Jones stated that she has never used the Kirby/North Braeswood intersection because she knows she would be unable to do so. (EH 203:7-10) Ms. Jones earlier testimony, however, provided reason to believe the conditions at that corner are not the reason she does not travel there as a pedestrian. Ms. Jones cited a Target store and a Toys R Us store she frequents southwest of the complained-of intersection as the reason she would use that intersection.(EH 203:2-6) The stores are not located at that intersection, but in the area. (EH 202:9-18) To get to the intersection of Kirby and North Braeswood, which is south and slightly east of her house (See Pl. Exh. 106 ), Ms. Jones would have to travel south through West University Village. (EH 714:19-715:2) When asked on direct examination whether she could go from her house to the Village, Ms. Jones stated that she "would not attempt that either, because a lot of the curb cuts I know I'd get stuck." (40:7-10) Therefore, Ms. Jones's assertion that she would use the Kirby/North Braeswood intersection but for the condition of the northwest and southeast ramps is disingenuous. There are quite literally miles of other reasons that Ms. Jones would not use that intersection. While this alone may not suffice to defeat standing, when taken with the other factors, it is, at least, illuminating. Plaintiff must be able to demonstrate that but for the complained-of barrier she would use the complained-of facility.[18] In this situation, Ms. Jones cannot so demonstrate.

11.     The final criteria to show standing is that plaintiff must show that her injury will be redressed by the requested action.[19] The work at the intersection of Kirby and North Braeswood was completed in the fall of 1995. Since that time, and as of the hearing, extensive construction

---

[18] *Steger v. Franco*, Inc. 228 F.3d 889, 892 (8th Cir. 2000); followed by *Ass'n for Disabled Americans v. 7-Eleven, Inc*, 2002 U.S.Dist. Lexis 6163. (5th Cir. 2002)

had occurred or is occurring at that location.(EH 713:2-18) Photos taken near the time of the hearing showed hanging traffic lights in place of the RCTSS-installed arm poles, and, as stated previously, burlap covering the pedestrian signals.(METRO Exh. 32). The features installed under the RCTSS project have already been significantly changed, and Mr. Smith testified there is likely to be additional change which would render any remediation by METRO useless. (EH 713:15-714:1). This assumes that the work performed ten years ago had not been altered before this construction project. This assumption does not have much support. Just from the time Plaintiff filed suit to the time of the evidentiary hearing what had previously been a dirt pedestrian path was paved with blacktop. (MTA Exh. 32). It is worthy of noting that the newly installed pedestrian way did not appear to address neighboring pedestrian features either, including the ramp or pedestrian buttons. It was not altered in such a way as to incorporate access to other facilities and pedestrian features.

12.     Despite the very large scope and long span of the construction project, Ms. Jones was unaware if there even was current construction going on at this intersection. (136:6-9) Due to the previous and current intervening events, specifically large-scale construction by a non-METRO entity, no remedy the court can offer in the form of injunctive or other relief against METRO would address any harm suffered by Jones. Thus Jones fails to meet the redressability criterion with regard to this intersection.

**B.     Jones lacks standing with regard to pedestrian control buttons.**

13.     The court indicated that in light of the lack of evidence regarding what pedestrian buttons do, if anything, the issue's legal significance was questionable. (EH 778-784:4) Further, the issue was not raised by the court in its order following the evidentiary hearing. However, in an

---

[19] *Steger*, 228 F.3d at 893.

abundance of caution, because the issue was raised repeatedly by Plaintiff, Defendant will briefly address the issue as raised by Plaintiff.

14.     Plaintiff has failed to show any harm as a result of any inability to access push buttons on traffic poles. Plaintiff was asked multiple times if there would be a different result if she pushed a pedestrian button than when she didn't. Plaintiff did not know the effects, if any, of the pedestrian signals at the San Felipe intersection (EH H 114-115). Plaintiff stated that a walk signal will come up whether she pushes a pedestrian control button or not. (EH 114:16-114:22) She does not know if she has to wait longer for a walk signal if she doesn't push the button. (EH 114:23-115:1) At another light,[20] Plaintiff stated she doesn't know if the button has any effect on the length of time it takes for a signal to change. (EH 55:11-13). She doesn't know if the pedestrian control button extends the time for her to cross. (EH 55:2-55:6) Jones was not even sure if a walk sign did or did not appear when the light in her direction of travel turned green without her pushing a button. (EH 56:6 – 55:16) Had Ms. Jones waited at a location, unable to access the pedestrian signal, been unwilling to or uncomfortable making the crossing with a walk signal and never gotten one, it is reasonable to believe she would remember such an event. She failed to cite such an occurrence.

15.     Plaintiff failed to show that she has been harmed by her alleged lack of access to pushbuttons at the two intersections of which she complained. She did not identify even a single instance in which her traveling experience would have been different if not for the inability to access pedestrian buttons. At one of the complained-of intersections the push buttons are not usable by anyone at all. At the other, the ramps, roads and sidewalks have been wholly reconstructed. Because Plaintiff failed to show any harm related to pushbuttons, she has failed to demonstrate standing to assert these complaints.

---

[20] This location was Alabama at Buffalo Speedway, which was a non-RCTSS installation intersection.

## C.    Jones's complaints are moot.

16.    The only two intersections relevant to this case, Kirby at North Braeswood and San Felipe at Voss, have both been subject to significant construction since the RCTSS work more than ten years ago. This makes it impossible to assess the nature of the work as completed under RCTSS. One cannot assume there were violations at the close of the RCTSS work without evidence. Jones has had many years to assert a complaint about these locations. A more timely complaint may have revealed the condition of the intersections as they were at the completion of the RCTSS work. Now, however, that condition cannot be known. More significant for litigation purposes, given the scope of the subsequent work, any harm Jones is currently suffering as a result of the conditions at the intersections is the result of the more recent construction.

17.    To show that issues are moot, a defendant "must demonstrate that it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" [21] Further, a case is moot if interim events have completely and irrevocably eradicated the effects of the alleged violation.[22]

18.    In this case, both criteria are met. Loyd Smith testified that all construction work involving any surface disruption associated with the RCTSS project is complete. (EH 720:14 – 721:8) All remaining electrical work will be completed by September 2006. (EH 721:3-8). The allegations against METRO are a textbook example of mootness. Assuming for the moment that METRO did commit violations at intersections of which Plaintiff had knowledge and intention to use, those violations have been irrevocably eradicated by interim events. After more than twelve years, all construction, installations, and replacements of poles associated with the RCTSS

---

[21]Memorandum p. 22; quoting *Gwaltney of Smithfiled Ltd., v. Chesapeake Bay Found., Inc*, 484 U.S. 49, 66 (1987); (quoting *United States v. Phosphate Exp. Ass'n, Inc*. 393 U.S. 199, 203 (1968); *Carr v. Alta Verde Indus., Inc.*, 931 F.2d 1055, 1062 (5th Cir. 1991); see *Gates v. Cook*, 2004 WL 1440601 (5th Cir. June 28, 2004); *Pederson*, 213 F.3d at 874.
[22] *Pederson*, 213 F.3d at 874.

project have been finished, and it can be reasonably anticipated that the project will not be repeated. The plaintiff had an opportunity to express her grievances about all aspects of the RCTSS project. The first time she did so was in litigation, and even then she only complained of two intersections. Though in this case a finding of mootness will not serve the purpose of avoiding unnecessary litigation, it does provide ample basis for a denial of injunctive relief. Such a finding is appropriate here.

## D.  Jones's claims are barred by the statute of limitations.

19.    As has been pointed out many times already in this brief, Plaintiff may assert complaints only about the facilities at which she is aware of injury she has or would suffer, and for facilities she would use but for the violations. Again, Jones did not assert any complaints about West Alabama at Stanford, though the intersection was mentioned. Again, too, any complaints about that location were not disclosed to METRO prior to the hearing, or, indeed, at the hearing. Therefore, we are left with complaints about two intersections. RCTSS work at both of those intersections was completed more than ten years ago. Plaintiff has lived in the same area for her entire life.[23] She cited no new change that triggered an awareness of these pre-existing conditions. More importantly, since the burden rests with plaintiff, she was unable to provide information about when she first noticed the problems at the complained of locations. The statute of limitations as discussed in the court's order and in prior pleadings by the defendants, is two years.[24] Older violations may be included in a suit under the continuing violation doctrine.[25] For the continuing violation doctrine to apply, however, at least one of the violations must have been

---

[23] Jones Depo. 67:23-25.

[24] The court must apply the analogous statute of limitations for ADA cases, as no limitation period is provided under the statute. *Smith v. Int'l Org. of Masters, Mates, and Pilots*, 296 F.3d 380, 382 (5th Cir. 2002). Most circuits apply the limitations period for personal injury actions. *Everett v. Cobb County Sch. Dist., 138 F.3d 1407, 1409* (11th Cir. 1998).

[25] *Frank v. Xerox Corp.*, 347 F.3d 130, 136 *5th Cir. 2003).

committed during the two years limitations period.[26]  If the acts are discrete, and occurring at different times in different ways, there is no continuing violation.[27]  In this case, there are periods of years between the alleged acts of ADA violation.  The only common denominator is the umbrella of a fourteen year project.  Most importantly, there is no allegation of an ADA violation committed within the two years prior to the filing date asserted by Jones in this suit.  Accordingly, her claims against METRO pertaining to the RCTSS project are time-barred.

### III. WHAT IS METRO'S OBLIGATION, IF ANY, WHEN IT CREATES A "DISTURBED AREA" BY INSTALLING A TRAFFIC POLE?

**A.     Analysis of Applicable Statute and Case Law**

20.     The law regarding METRO's duty with regard to disturbed areas created by installing a traffic pole is clear.  As was previously stated by the court in its order, and as reflected in 28 C.F.R §35.151(b),  when METRO alters a facility, it must make the altered portion of the facility accessible to the maximum extent feasible.  Because the law is clear, confusion will only arise when terms within those statutes are disputed. In this case, the disputed term is "altered portion."

21.     In this case, it is useful to start by examining the facility in question: the traffic pole.  The only feature on the facility itself which can be considered to be an "accessible feature" is a push button if a push button, is provided.  If so, the considerations include size and reach.  Aside from the internal wiring, the arm or signal support, the lights themselves, and push buttons, if any, there is not much more to the facility itself.  The majority of the space occupied by the facility is vertical, while the base is relatively small. When ADA regulations refer to a "facility" and that term is applied to an RCTSS pole, the facility is simply the traffic pole, itself, from top to bottom.  Accordingly, the primary ADA concern when placing traffic poles is to avoid or rectify a negative impact, if any, on other pedestrian facilities.

---

[26] *Felton v. Polles*, 315 F.3d 470, 48/5 (5th Cir. 2002); *Huckabay v. Moore*, 142 F.3d 133, 239 (5th Cir. 198).
[27] *Frank* at 136.

22.     In some cases, a signal pole might touch or even overlap on another facility, such as a sidewalk. In those cases, the replacement of the pole might create a disturbed area. There is a difference between a disturbance and an alteration. While to point out the difference between a "disturbance" and an "alteration" may seem to be hair-splitting of the type frowned upon by the courts, such word choice can make a big difference. For example, a traffic pole may "disturb" the sidewalk a bit by overlapping by a few inches, but if it doesn't diminish that sidewalk's width to below accessibility requirements, or otherwise affect the usability of that separate facility (the sidewalk), then it is not required to make that portion of the sidewalk accessible.[28]

23.     For all the measurements, angles, widths, heights, and other specifications provided by the ADAAG, there is absolutely nothing to provide guidance on how to measure the "altered portion" of a facility when work is done. There is no ratio, for example, if six inches are altered, six inches on either side must be made accessible. There is no other form of demarcation provided.    Accordingly, in the absence of direction to the contrary, the words should be given their normal usage.[29] The common meanings given to the two troublesome words are as follows:

> **Alter**: To make different without changing into something else.
> **Portion**: An often limited part set off or abstracted from the whole
> (*Source: Merriam Webster Online Dictionary*)[30]

Thus, taken in their plainest meanings, the altered portion of a facility would be the limited part that was made different without changing it into something else. As another test, this definition is in keeping with the ADA provision that no alteration is required that will fundamentally change the nature of a program, service, activity, or, presumably, facility.[31]

24.     The court stated in its order that if METRO's RCTSS work "disrupts" a portion of the sidewalk, it is required to make the "altered portion" of the sidewalk accessible to the disabled to

---

[28] 28 C.F.R §35.151(b)
[29] *Consolidated Bank, N.A. v. United States Dep't of Treasury*, 118 F.3d 1461, 1464 (11th Cir. 1997).
[30] www.m-w.com/dictionary

the maximum extent feasible.[32] From the context of the order, Defendant has taken this to mean a direct and actual alteration, or disturbance, is required, and not a conceptual alteration. Thus, if work to a traffic pole physically disrupts a sidewalk or ramp, METRO is required to repair that disturbed portion to the current ADA standards to the maximum extent feasible. More guidance on this issue can be found where the court addresses the issue of the City's responsibility with regard to sidewalks and curb cuts in the September 2003 Memorandum. While the court stated that the resurfacing of a street required the installation of curb cuts, the installation of curb cuts did not then trigger the duty to install sidewalks. As the court stated, "this would require a change to an existing facility that is not itself altered." [33] The court made the same distinction between sidewalks and traffic poles for METRO: "The ADA does not require METRO to retrofit the entire sidewalk adjacent to the pole unless that sidewalk has itself been altered." The court went on to say again that the sidewalk is a separate facility. [34] While these statements were made in the context of electrical alterations, the rule would apply regardless. If a pole is replaced but does not touch the sidewalk or ramp, that alteration does not affect a sidewalk any more than electrical work.

25.   As with the terminology within the statute, there is no case law guidance on how to interpret the statute itself. Despite the tortured interpretations of otherwise simple words in this case, the language of §35.151(b) is plain. The plain language in the statute and the simplest meaning of the words dictate that METRO's obligation when it creates a disturbed area on an existing pedestrian facility by replacing a traffic pole is to make that disturbed area accessible to those with disabilities – not the entire disturbed facility, not a separate facility adjacent to the disturbed facility – the disturbed area of the disturbed facility.

---

[31] 28 C.F.R 35.150(a)(3).
[32] Memorandum p 48.
[33] Memorandum p. 46.

14

**B.    Analysis of Plaintiff's Argument**

26.    There seems to be a fundamental misunderstanding on Plaintiff's part with regard to the language of 28 C.F.R. §35.151(b). The language states that when a facility is altered, the *altered portion* of the facility must be made accessible to the maximum extent feasible. Plaintiff's argument seems to be based on a belief that the entire *altered facility* must be made accessible, rather than just a portion of that facility. This is the only reasonable explanation for the extent to which she argues one must make altered facilities accessible. Further, Plaintiff argues that facilities in the vicinity of the altered facility must be updated.

27.    Plaintiff's brief makes a number of misstatements of the law or the record. First, Plaintiff states that the court made a ruling that the replacement of a traffic signal pole constitutes an alteration of an *intersection.* By that argument Plaintiff seems to be saying the intersection is the facility, and the traffic signal pole is part of an altered portion of that intersection. The court's order does not so state. The order does not address the intersection as a facility, but states that the traffic signal itself is a facility.[35] Therefore, the alteration to that facility, assuming no other facilities like the sidewalk or curb ramp are touched by the work, is self-contained, and not viewed for its conceptual, residual or symbiotic effect on other independent facilities in the area.

28.    Plaintiff states that because traffic poles are alterations *at* intersections, they are necessarily alterations *to* intersections. This takes us back to Plaintiff's assumption that an intersection is a facility and all the parts therein, sidewalks, ramps, curbs, signs, traffic signals, etc., are merely components of the intersection facility. This premise has never been supported by any case law, any court determination, or any regulation that has been brought forth in this case. Far from being a "splitting hairs" argument, the distinction between the prepositions "at" and "to" is vitally important here. By attempting to ignore that distinction, Plaintiff hopes to

---

[34] Memorandum p. 52.

inject §35.151(e) into the arguments. This provision requires that all *newly* constructed street level *pedestrian walkways* contain curb cuts. So if Plaintiff can convince the court that the replacement of a signal pole near a corner is the alteration of an intersection, it may trigger the curb ramp installation requirements of §35.151(e).

29.     Another leap that must be made to accept the applicability of §35.151(e)(2), requiring installations of curb ramp installation at newly constructed pedestrian walkways, is that a traffic signal is a pedestrian walkway. Throughout the pendency of this case Plaintiff has failed to accept any distinction whatsoever between a traffic signal pole and a pedestrian walkway. A traffic signal such as the ones installed under the RCTSS project can never be a "pedestrian walkway." Yet Plaintiff continues to make arguments that seem to be trying to turn every RCTSS pole replacement into entire newly constructed corners, if not intersections, complete with curb ramps and sidewalks. While METRO can understand the desire behind the argument, it is not supported in any way by statute or precedent. In addition, such a broad departure from the language and intent of the relevant regulations and the inevitable results would fundamentally change the nature of the RCTSS project, and would be patently unfair. It would also thwart any non-mandatory public works by creating such an enormous and far-reaching burden with regard to the updating of unrelated facilities.

30.     Plaintiff argues that the replacement of the signal poles affects pedestrian traffic. Actually, as Loyd Smith testified, there should be no affect on pedestrian traffic as a result of the RCTSS work. The timing sequences at the RCTSS locations are dictated by other entities. There were no changes made as a result of the RCTSS program. Therefore, if a light worked in a particular way prior to the RCTSS work, it can be expected to work in the same way after. (EH

---

[35] Memorandum p. 48.

702:19-703:3)[36] An exception to this rule may be seen with prioritization and preemption of mass transit vehicles and emergency vehicles, but not the general public.(Smith Depo 33:15-20). It must be remembered that METRO is in the business of mass transit, and not individual transportation, and there is a difference between the two.

31.     Plaintiff discusses primary function, and cites to the court memorandum and order of September 2003.  Since that time, no evidence pertaining to the primary function of a traffic signal pole has been provided.  In fact, the issue has become murkier, if anything.  While pedestrian travel is obviously a significant concern at intersections, the fact that so many traffic poles perform their jobs without pushbuttons, pedestrian signals, or either, undercuts any argument that push buttons or pedestrian features are essential to the primary functions of traffic poles.

## C.     Plaintiff's Argument Regarding Paths to Push Buttons

32.     Again, because the Plaintiff has raised the issue many times, Defendant will briefly address Plaintiff's argument that METRO must install sidewalks to traffic poles located off sidewalks.  As has been stated many times throughout this case, sidewalks and traffic signals are separate facilities.  The replacement of a signal pole is a project and facility unto itself.  If the installation of that facility does not affect any sidewalk, it makes no sense that that separate facility would have to be altered in any way.  It makes even less sense to suggest that the alteration of one facility triggers the requirement to *create* a totally separate facility, such as Plaintiff's argument for installing new sidewalks from existing sidewalks to the poles would require. Regardless, as stated above, Plaintiff has provided no evidence of injury in relation to the push buttons.  An inability to access the controls is insufficient to show that her activities have been altered by that inability.  In light of the fact that, as the court pointed out, we have all

---

[36] See also Smith Depo 33:1-14.

wondered about the usefulness of those items, and in the absence of any evidence that they actually perform a function, there is no evidence to support any action in relation to this issue.

**D.      Plaintiff's Argument of Joint and Several Liability**

33.     Plaintiff's assertion of joint and several liability is without support in fact or law.   There was no joint enterprise or other activity which would give rise to joint and several liability.  More importantly, there is no support for application of that theory of liability under any relevant statutes.  Finally, Plaintiff has not pleaded this theory of recovery, nor provided any notice of his intention to proceed with it prior to the filing of his post-hearing brief.   Accordingly, Plaintiff's request to assert this theory of recovery should be denied.

## IV. CONCLUSION

34.     Plaintiff asserted 925 complaints about 80 intersections against METRO.   For more than two and a half years Defendant investigated, prepared and participated in the litigation of this case in good faith.   Plaintiff repeatedly filed motions, pleadings, and other documents which accused METRO of many violations of the ADA and complained of the adverse effect of those violations on Ms. Jones.   On December 9, 2005, METRO discovered that Ms. Jones was actually only concerned with two locations, both of which were over ten years old, and had or were currently undergoing major reconstruction.   These two locations represent 14 of the complaints presented to METRO by Plaintiff's expert, or less than 1.5% of the allegations METRO spent over $150,000 in working hours and other expenses to identify, investigate and address.   More curious still is the fact that Plaintiff never once brought any alleged problems at these two locations to METRO's attention prior to filing suit, nor indeed until twenty-three months and two weeks *after* filing.

35.     Plaintiff has failed to provide any evidence of work actually done by METRO which caused her injury.   Her complaints at San Felipe and Voss are related to ramps which she admits

18

were put in recently - years after the RCTSS work at that location. The intersection of Kirby and North Braeswood is undergoing major reconstruction of which Plaintiff wasn't even aware. Finally, Plaintiff asserted complaints about push buttons which she cannot even say do anything whatsoever.

36.     Jones's request for relief at the conclusion of her motion asks that the court enjoin METRO to conform to the ADAAG/TAS with new traffic poles where pedestrian controls are provided and/or sidewalk is altered. There has been no testimony that any of the signal poles presented were new signal poles. In fact, there has been no evidence presented, nor the issue even raised, regarding whether poles were new or replacement. The vast, vast majority of the already small number of pole placements were replacement poles. All Plaintiff's complaints pertain to replacement poles. Thus Plaintiff's request for relief is inapplicable.

37.     With regard to any other relief, Jones failed to demonstrate standing with regard to any of the asserted claims. Her claims have been rendered moot due to subsequent construction. Finally, the Jones's claims are barred by limitations.

38.     Plaintiff could not identify one complaint she had made to METRO prior to this lawsuit that went unanswered. She could not identify more than one complaint that she had made, period. Plaintiff brought suit alleging far-reaching ADA violations. Plaintiff has failed to provide support for those allegations. Further, though Plaintiff's original claims complained of violations in her neighborhood and the Spur 527 mitigation area, none of those complaints was presented as evidence, and neither of the two intersections of which Plaintiff ultimately complained are in her neighborhood or the mitigation area.

39.     Plaintiff has failed to demonstrate injury as a result of any ADA violation by METRO. She has failed to show that she has been denied participation in any program, service, or activity provided by METRO because of her disability. Accordingly, Plaintiff has failed to demonstrate

any need, nor any basis for relief against METRO from this court. Defendant METRO therefore respectfully requests that this court deny Plaintiff's request for injunctive relief.

## PRAYER

WHEREFORE, Premises considered, Defendant Metropolitan Transit Authority prays that this court deny Plaintiff's request for injunctive relief, and for any and all such further relief to which Defendant may be justly entitled.

Respectfully submitted,

Jakki A. Hansen
Federal Admission No. 32213
State Bar No. 24000886
ATTORNEY FOR DEFENDANTS,
SHIRLEY DELIBERO AND
METROPOLITAN TRANSIT AUTHORITY
OF HARRIS COUNTY, TEXAS
P. O. Box 61429
Houston, Texas 77208-1429
(713) 739-3755
(713) 739-4699 FAX

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing instrument has been served upon all Attorneys of Record by certified mail, return receipt requested, on this the 6th day of March, 2006.

Jakki A. Hansen

20