IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KRISTEN E. JONES, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-03-2286 |
| § | |
| BILL WHITE, CITY OF HOUSTON, § | |
| SHIRLEY DELIBERO, *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND OPINION ON JONES'S MOTION TO RECOVER STATUTORY DAMAGES**

In this disability discrimination case, plaintiff Kristen E. Jones sued the City of Houston and its mayor, Bill White (together, the "City"), and the Metropolitan Transit Authority of Harris County and its president and chief executive officer, Shirley Delibero (together, "METRO"). Jones alleged violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq.*; section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; Chapter 121 of the Texas Human Resources Code; and Article 9102 of the Texas Revised Civil Statutes.[1]  (Docket Entry No. 19).  Jones alleged that the City and METRO discriminated against the disabled by failing to provide wheelchair access to streets, crosswalks, and sidewalks affected by roadway and utility construction. (*Id.* at ¶ 2). Jones also alleged that defendants' existing facilities are inaccessible to persons in wheelchairs.

---

[1] Article 9102 of the Texas Revised Civil Statutes, the Texas Architectural Barriers Act, is now codified at Chapter 469 of the Texas Government Code.  Tex. Govt. Code §§ 469.001-.208 (Vernon Supp. 2004).

(*Id.* at ¶ 3).

This court dismissed Jones's claims against METRO, granted in part and denied in part Jones's claims for relief against the City, and granted in part and denied in part Jones's request for a permanent injunction against the City.  After Jones filed this suit, the City agreed to install or repair a number of curb ramps and curb cuts at corners that did not comply with the applicable federal and state regulations, but the parties disagreed as to the extent and nature of the City's obligation.  This court found that Jones met the requirements for a permanent injunction with respect to certain curbs, curb cuts, and ramps that are in a pedestrian walkway and the street is altered by resurfacing from intersection to intersection. These curbs, curb cuts, and ramps did not meet the ADA standards for altered facilities, specifically the Texas Accessibility Standards ("TAS") and 28 C.F.R. Pt. 36, App. A (ADA Accessibility Guidelines For Buildings and Facilities, ("ADAAG"),  28 C.F.R. § 35.151(b) and (e).  This court concluded that the City's failure to comply with 28 C.F.R. § 35.151(b) and (e) by making the corners on the resurfaced streets compliant with the ADAAG and TAS regulations violated the ADA.

This court found that the failure to grant an injunction would result in irreparable injury to Jones, who has been unable to traverse certain City streets and sidewalks because of these noncompliant ramps and curbs, and that the damage to Jones from the City's continuing ADA violation outweighed the cost to the City to bring these intersections into compliance.  This court ordered the City to repair, and if necessary, rebuild curbs, curb cuts, and ramps in the City of Houston, Harris County, Texas placed in a pedestrian walkway:  (a)

that do not at a minimum meet the applicable TAS and ADAAG standards for altered facilities; and (b) are part of a facility hereafter altered by street resurfacing extending from intersection to intersection or by construction. The court also ordered the City to repair, and if necessary, rebuild curbs, curb cuts, and ramps at thirty-four specific corners and set a timetable for this work.

Jones now moves for statutory damages under the section 121.004(b) of the Texas Human Resources Code for the City's violations of the standards governing wheelchair access to certain streets and sidewalks. (Docket Entry No. 152). The City has responded, opposing any award of statutory damages greater than $100.00. (Docket Entry No. 156). Jones has replied. (Docket Entry No. 157).

Section 121.003 of the Texas Human Resources Code prohibits discrimination on the basis of a disability, including a "refusal to allow a person with a disability to use or be admitted to any public facility. . . , and a failure to: (3) provide auxiliary aids and services necessary to allow the full use and enjoyment of the public facility." TEX. HUM. RES. CODE ANN. § 121.003(d) (Vernon 2001). The City does not dispute that the court's prior findings and conclusions establish a violation of the Texas Human Resources Code and trigger its statutory damages provision. Section 121.004 provides:

> (a) A person, firm, association, corporation, or other organization, or the agent of a person, firm, association, corporation, or other organization who violates a provision of Section 121.003 commits an offense. An offense under this subsection is a misdemeanor punishable by a fine of not less than $300 or more than $1,000.
> (b) In addition to the penalty provided in Subsection (a) of this

> section, a person, firm, association, corporation, or other organization, or the agent of a person, firm, association, corporation, or other organization, who violates the provisions of Section 121.003 of this chapter is deemed to have deprived a person with a disability of his or her civil liberties. The person with a disability deprived of his or her civil liberties may maintain a cause of action for damages in a court of competent jurisdiction, and *there is a conclusive presumption of damages in the amount of at least $100 to the person with a disability.*

TEX. HUM. RES. CODE ANN. § 121.004 (Vernon 2003) (emphasis added).

Jones asserts that the City has committed 424 violations and that she should receive $100 in statutory damages for each violation, for a total of $42,400. (Docket Entry No. 152 at 3–5). The City responds that section 121.004 does not refer to damages awards based on the number of violations or the duration of the violations, but instead based on the entity or person committing the violations. (Docket Entry No. 156 at 2). In response to the City's objection that Jones is applying an overly expansive interpretation of the statute, Jones asserts that the statute could support a damages award of $100 for each day that the violation persisted, for a total of $122,200, or $100 per day *and* per violation, for a total of $51,812,800.00.

The statutory language is the starting point for the analysis.[2] Section 121.004(b) simply provides that a "person with a disability deprived of his or her civil liberties may maintain a cause of action for damages in a court of competent jurisdiction, and there is a conclusive presumption of damages in the amount of at least $100 to the person with a

---

[2] The fact that Jones did not explain the basis for statutory damages in her deposition is not determinative.

4

disability." The statute provides that $100 is the minimum amount of presumed damages for a deemed civil rights deprivation, but does not state what criteria a court is to use to determine when more than $100 is appropriately awarded or how much more than $100 should be awarded. As one court has noted, the statute provides no guidance as to whether the "at least" $100 is "per day, per violation, or in total." *Spector v. Norwegian Cruise Line Ltd.*, 2004 WL 637894, at *1, n.4 (Tex. App.—Houston 2004, no pet.). The parties have not cited any case in which a court awarded section 121.004(b) statutory damages on a per-violation or per-day basis, or awarded more than $100 to a plaintiff.

In support of her "$100 per violation" approach, Jones points to Texas Government Code and Texas Occupations Code provisions setting penalties for violations. For example, Section 459.058 of the Texas Government Code allows the Texas Commission of Licensing and Regulation to impose an administrative penalty on a building owner for violating Texas building standards. Section 469.058 states that before a penalty may be imposed, the Commission must provide notice and an opportunity to cure. This code provision specifically states that "each day that a violation is not corrected is a separate violation." TEX. GOV'T CODE ANN. § 469.058(b) (Vernon 2003). Section 51.302 of the Texas Occupations Code provides that an administrative penalty assessed by the Commission for violations of the Texas Accessibility Standards Code may not exceed $5,000 per day for each violation; that each day a violation "continues or occurs is a separate violation for purposes of imposing a penalty"; and that the amount of the penalty is to be based on specified factors, including "the seriousness of the violation, the respondent's history of previous violations,

the amount necessary to deter a future violation, efforts made by the respondent to correct the violation, and any other matter that justice may require." TEX. OCC. CODE ANN. § 51.302 (Vernon 2003).

By contrast, as Jones acknowledges, the Texas Human Resources Code, under which Jones seeks statutory damages, provides "no specific guidance" for applying section 121.004(b). (Docket Entry No. 157 at 5). Other Texas statutes show that the legislature knew how to direct a court to assess damages on a per-day or per-violation basis. The absence of such language in section 121.004(b) suggests that the Texas legislature did not intend a per-violation or a per-day basis for awarding damages to private plaintiffs. *Cf. Smoot v. United Transportation Union*, 246 F.3d 633, 644 (6th Cir. 2001) ("Congress knows how to specify an award that is to be multiplied on the basis of the frequency of the violation") (internal quotations omitted).

The City argues that this court should look for guidance to the federal statutes prohibiting discrimination against the disabled and providing private rights of action   But there is no analogous damages provision in the federal statutes prohibiting discrimination in disabled persons' access to public facilities. *See* 42 U.S.C. § 12133 (Title II of the ADA borrows remedies from the Rehabilitation Act); 29 U.S.C. § 794a(2) (Rehabilitation Act borrows remedies from Title VI of the Civil Rights Act of 1964). The issues courts have struggled with under the ADA—the limits on private rights of action to enforce different regulations implemented under the ADA, *see, e.g., Ability Center of Greater Toledo v. City of Sandusky*, 385 F.3d 901 (6th Cir. 2004), whether any compensatory damages are

recoverable and if so, whether proof of intentional discrimination is required using a "deliberate indifference" standard, *see Alexander v. Sandoval*, 532 U.S. 275, 280-81 (2001) (stating that private individuals may not recover compensatory damages under Title VI except for intentional discrimination); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir.2001)—do not provide guidance for applying the statutory damages provision in section 121.004(b) of the Texas Human Resources Code.

The City cites to two cases awarding damages under section 121.004(b). In *Johnson v. Gambrinus Company/Spoetzl Brewery*, 116 F.3d 1052 (5th Cir. 1997), a brewery refused to allow a service animal for a disabled person on a public tour of the brewing facility. The district court found liability under the ADA and the Texas Human Resources Code. The court awarded the $100 minimum under section 121.004(b) and the Fifth Circuit affirmed. In *Lara v. Cinemark USA, Inc*., 1999 WL 305108 (W.D.Tex. Feb. 4, 1999), the plaintiffs alleged that eighteen public auditorium theaters were inaccessible to the disabled. Each plaintiff had attended a motion picture at the defendant's complex. The court found liability under Texas Human Resources Code and the ADA. The court found that each wheelchair-bound plaintiff, five of seven individual plaintiffs, was entitled to $100 in statutory damages. *Id.* at *3. The court denied the statutory damages to a blind plaintiff and a plaintiff with an physical disability that did not require a wheelchair. *Id.* The *Lara* court did not consider how many auditoriums were at the theater, how often plaintiffs had visited the theater, or how many days the violations had persisted. These cases provide no guidance as to whether or when damages above $100 should be awarded under section 121.004(b).

Jones argues that this court should consider the fact that she was unable to travel on certain inaccessible streets and sidewalks and the resulting inconvenience and mental suffering in increasing the statutory damages award. There are two problems with this argument. First, there is scant evidence of the nature or extent of any such damages. Jones testified that although she had difficulty in accessing certain streets and sidewalks, she did not attempt to travel over many of the corners that are included in the separate violations her counsel proposes to use as the basis of the damages calculation. Nor is there a persuasive basis for awarding such damages under section 121.004(b). The $100 damages provided in the statute are "presumed" damages for a "deemed" civil rights violation. Such a damages provision is neither a penalty nor a compensatory, actual damages provision. Rather, this damages provision is closer to a nominal damages remedy used when constitutional or civil rights are violated but it is difficult to establish actual damages beyond the violation itself.

In *Williams v. Kaufman* County, 352 F.3d 994 (5th Cir. 2003), a district court found a municipality liable for a search that violated the plaintiff's constitutional rights. The court awarded $100 in nominal damages. The court explained:

> The law is well-established in this Circuit that plaintiffs may recover nominal damages when their constitutional rights have been violated but they are unable to prove actual injury. . . . In *Carey v. Piphus*, the Supreme Court recognized the ability of courts to award "a nominal sum of money" when a violation of one's rights does not result in actual injury, and awarded nominal damages of one dollar. The Court did not indicate, however, that in 1978 one dollar was the outer limit of such damages. Although $100 is obviously greater than one dollar, this amount is certainly not out of line with nominal damages that we have awarded in the commercial state law context.

352 F.3d at 1001. Courts award nominal damages in civil rights suits brought under 42 U.S.C. § 1981 or § 1983 or under employment discrimination statutes when the plaintiff has proven a civil rights deprivation but cannot show actual damages. *See, e.g., Jimenez v. Paw-Paw's Camper City, Inc.*, 2002 WL 257691 (E.D. La. Feb. 22, 2002) (citing *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 940, 941 (5th Cir.1996) (§ 1983); *Bailey v. Runyon*, 220 F.3d 879, 880 (8th Cir.2000) (Title VII); *Searles v. Van Bebber*, 251 F.3d 869, 879 (10th Cir.2001) (§ 1983); *Louisiana ACORN Fair Housing v. LeBlanc*, 211 F.3d 298, 302 (5th Cir.2000) (§ 1983); *Alexander v. Riga*, 208 F.3d 419, 429 (3d Cir.2000); *Carey v. Piphus*, 435 U.S. 247, 266–67 (1978)).

The $100 presumptive-damages provision in the Texas Human Resources Code is very similar to nominal damages used to vindicate civil rights violations in the absence of actual damages proof. Although the "at least" language makes it clear that a larger amount could be awarded, there is no statutory support for multiplying the amount on a per-day or per-occurrence basis. The statutes Jones cites that do call for this method of increasing damages govern public administrative penalties rather than private damages suits. Jones offers no other basis for increasing the damages amount that is supported by or consistent with the statutory language. Jones suggests that applying the section 121.004(b) $100 damages provision on a per-plaintiff or per-case basis will simply lead to multiple suits filed for repeated or similar violations. This argument is undercut by the fees required to file lawsuits.

The City of Houston must pay Jones $100 in statutory damages under section

9

121.004(b).  The parties are directed to prepare a proposed form of final judgment and file it with the court no later than **November 27, 2006.**  Jones may file her motion for attorneys' fees and related nontaxable expenses within 14 days after entry of judgment.  *See* FED. R. CIV. P. 54(d)(2).

SIGNED on November 17, 2006, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge