**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KRISTEN E. JONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-03-2286 |
| | § | |
| BILL WHITE, CITY OF HOUSTON, | § | |
| SHIRLEY DELIBERO, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER ON PLAINTIFF'S APPLICATION FOR
ATTORNEYS' FEES AND THE CITY'S MOTION TO RETAX COSTS**

On August 29, 2006, a permanent injunction and final judgment were entered in favor

of plaintiff Kristen Jones on her claims under the Americans with Disabilities Act, 42 U.S.C.

§§ 12131 *et seq.*, against the City of Houston. The claims against METRO were dismissed.

Jones has applied for an award of her fees and filed a bill of costs. The City does not dispute

that Jones is a prevailing party entitled to recover reasonable fees and allowed costs. The

City has, however, challenged the amount of the fees and some of the costs Jones seeks to

recover.

Jones filed an application for attorneys' fees, (Docket Entry Nos. 163), to which the

City responded, (Docket Entry No. 166), Jones replied, (Docket Entry No. 167), and the City

surreplied, (Docket Entry No. 168). The primary issues are whether the fees Jones seeks are

reasonable and adequately supported.

Jones also filed a bill of costs. (Docket Entry No. 162). The City filed objections and

1

a motion to retax costs consistent with those objections.  (Docket Entry Nos. 164, 165).

Jones responded.  (Docket Entry No. 169).  The primary issue is whether the costs exceed

those allowed under 28 U.S.C. § 1920.

Based on a careful review of the record, the motions, responses, and reply, and the

applicable law, this court grants Jones's application for attorneys' fees and grants in part the

City's motion to retax the costs.  Jones is awarded $265,769.15 in attorneys' fees and

$5,682.33 in costs of court. The reasons for these rulings are explained below.

## I.    Attorneys' Fees

The ADA provides:

> In any action or administrative proceeding commenced pursuant
> to this chapter, the court or agency, in its discretion, may allow
> the prevailing party, other than the United States, a reasonable
> attorney's fee, including litigation expenses, and costs.

42 U.S.C. § 12205.  The City agrees that Jones is entitled to attorneys' fees as a prevailing

party under the ADA.  The City disputes the amount Jones seeks.

The amount of attorneys' fees that a prevailing party is entitled to recover is

determined through a two-step process.  *Hopwood v. Texas*, 236 F.3d 256, 277 (5th Cir.

2000), *cert. denied*, 533 U.S. 929 (2001); *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047

(5th Cir. 1998).  First, the court calculates a "lodestar" by multiplying the reasonable number

of hours spent on the case by the reasonable hourly rates.  *Id.*  In determining a reasonable

number of hours, a court examines the records to determine whether the attorneys

demonstrated adequate billing judgment by "[writing] off unproductive, excessive, or

redundant hours." *Walker v. U.S. Dep't of Housing & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996).  Second, the court considers whether the lodestar should be adjusted upward or downward depending on the circumstances, using the factors set out in *Johnson v. Ga. Highway Express, Inc*., 488 F.2d 714 (5th Cir.1974).  The factors are:  (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Id.* at 717–19.

The City challenges both the hourly rates Jones's lawyers and legal professionals used and the reasonableness of the number of hours expended.  The City asks for a downward adjustment of the lodestar fee and Jones asks for enhancement.  Each issue is addressed below.

### A.    The Hourly Rates

### 1.    Jones's Lawyers

The City argues that the $250 hourly rate used by Jones's lawyers in calculating attorneys' fees is excessive.  The City argues that Jones's lawyers did not have experience with ADA cases and that Jones has not submitted evidence of the prevailing hourly rate for similar work performed by lawyers of similar expertise practicing in Harris County, Texas.

3

(Docket Entry No. 166 at 2-4).

Daniel Lundeen, Jones's lead counsel, testified in his affidavit that $250 per hour was "significantly lower" than his usual hourly rate and was reasonable based on his experience in the Houston legal market.  (Docket Entry No. 163 at 16).  Lundeen has 24 years of experience as a lawyer practicing in Houston.  His primary practice area is intellectual property.  Lundeen hired David Dickinson to help prepare the *Jones* case for trial and try it. (*Id*. at 4).  Dickinson testified in his affidavit that he has 35 years of experience as a practicing trial lawyer in Houston and is certified in civil trial law by the State Bar of Texas. Dickinson testified that to his personal knowledge, $250 is lower than an experienced trial lawyer in Houston generally charges and is a reasonable fee for a case with the factual and legal complications involved in Jones's claims.  (Docket Entry No. 163 at 11).  Both Lundeen and Dickinson acknowledged that they had "limited experience in the area of ADA litigation."  (*Id*.).

A reasonable hourly rate is based on the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  Both Lundeen and Dickinson testified that based on their years of experience practicing law in Harris County, Texas, $250 was a reasonable hourly charge for experienced lawyers working on complex trial matters. Case law supports their testimony.  *See Lee v. Dollar Tree Stores, Inc*., 2007 WL 1481075 (S.D. Tex. May 21, 2007) ($380 per hour billing rate in employment discrimination case); *Firth v. Don McGill of West Houston, Ltd.*, 2006 WL 846377, at *6 (S.D. Tex. Mar. 28, 2006) ($355 per hour rate in employment case); *Condon v. Hunting Energy Services L.P.*,

4

2006 WL 2882857 (S.D. Tex. May 13, 2006) ($250 per hour rate in copyright case); *Hopkins v. Texas Mast Climbers, L.L.C.*, 2005 WL 3435033, at *9 (S.D.Tex. Dec. 14 2005) ($225 per hour billing rate in FLSA case); *see also Butler v. MBNA Technology Inc.*, 140 Fed.Appx. 542 (5th Cir. 2005) (affirming $261 to $355 rates found reasonable in Northern District of Texas in employment discrimination case);*Downey v. Strain*, 2006 WL 1581234 (E.D. La. June 5, 2006) ($225 per hour in ADA employment case).

Neither Lundeen nor Dickinson has prior experience in ADA cases. The City argues that the $250 hourly rate should be reduced to reflect this lack of experience. *See Condon v. Hunting Energy Services L.P.*, 2006 WL 2882857, at*2 (S.D. Tex. Oct. 4, 2006) (reducing attorney's rates from $350 and $250 to $200 and $150 because "neither attorney seems to have significant prior employment law experience"). However, relatively few lawyers have experience in litigating the type of ADA claims involved in this case, dealing with complex regulatory requirements for wheelchair access to streets and sidewalks. Even fewer lawyers specialize in this area. Both Lundeen and Dickinson had extensive experience in practicing law. Lundeen has extensive experience in intellectual property cases, a background that was useful for the technical aspects involved in this case. Dickinson has extensive experience as a trial lawyer. Because the $250 hourly rate is relatively low for lawyers who have been practicing law for such a long time, there is no need for a further discount to reflect the fact that Jones's lawyers did not previously handle ADA public-access cases. The hourly rate of $250 used by Jones's lawyers is reasonable.

### 2.    Law Clerks

5

Jones also seeks fees for the time spent by law students who worked as law clerks. These clerks charged their time at rates ranging from $90 to $135 per hour. The City asserts "upon information and belief" that these rates "appear to exceed what associate lawyers in the Houston area are currently being paid" and that Jones has not submitted adequate support for these rates. (Docket Entry No. 166 at 4). The City suggests a rate of $30 per hour but does not identify why it selected that amount. (*Id*. at 4–5).

Lundeen testified in his affidavit that the amount charged for the clerks' work was reasonable. The clerks were second- and third-year law students. (Docket Entry No. 163, Ex. B at 3). Ten years ago, the Fifth Circuit found paralegal rates of $75 to $125 per hour reasonable in a Voting Rights Act case litigated in the Northern District of Texas. *League of United Latin American Citizens v. Roscoe Independent School Dist.*, 119 F.3d 1228, 1235 (5th Cir. 1997); *see also DeHoyos v. Allstate Corp.,* 240 F.R.D. 269 (W.D. Tex. 2007) ($145 rate for paralegal); *Firth v. Don McGill of West Houston, Ltd.*, 2006 WL 846377, at *6 (S.D. Tex. March 28, 2006) ($95 to $125 per hour fees for paralegal). Similar rates have been upheld for students performing work as law clerks. *See, e.g., Landmark American Ins. Co. v. Ray*, 2006 WL 4092436, at *3 (W.D. Tex. Dec. 21, 2006) ($100 per hour for law clerk); *Purdie v. Ace Cash Express, Inc.*, 2003 WL 22976611, at *9 (N.D. Tex. Dec. 11, 2003) (approving $75 to $125 per hour for clerks and paralegals); *Cope v. Duggins*, 203 F. Supp. 2d 650, 651 (E.D. La. 2002) ($85 rate for clerk); *but see Jimenez v. Paw-Paw's Camper City, Inc.*, 2002 WL 257691, at *21 (E.D. La. Feb. 22, 2002) (finding a $35 hourly rate reasonable in that district).

In *Condon v. Hunting Energy Services L.P.*, 2006 WL 2882857 (S.D. Tex. Oct. 4, 2006), the court reduced law clerks' hourly rates from $100 to $50 because their "backgrounds [were] not detailed." Lundeen testified that the law clerks were second- or third-year law students who have since become licensed to practice law. (Docket Entry No. 163, Ex. B at 3). The fee records show that the rates varied depending on the clerk's experience. (*See* Docket Entry No. 163, Ex. A at 20 (rate for clerk in June 2003 was $105 and in May 2004 was $120)). Given the nature of the work performed and the experience of the clerks, the hourly rates of $90 to $135 are reasonable.

## B.     Hourly Increments

The City argues that Jones's lawyers and law clerks used an unreasonable ".30–.40 billing increment." (Docket Entry No. 166 at 5). The City does not identify specific time entries that it claims were inflated as a result of using such an hourly increment. The record does not support the City's argument.

Courts have found that .25 hour billing increments can be unreasonable when used for brief tasks. *See Hagan v. MRS Assocs., Inc.*, 2001 WL 531119, at *4 (E.D. La. May 15, 2001). ("The billing records in this case, reflecting many quarter-hour time entries for the briefest of tasks, undermine the reasonableness of at least a portion of the billings."). The lowest hourly increment reflected in the time records of Jones's lead counsel, Daniel Lundeen, is a .2 hour increment. (Docket Entry No. 163, Ex. A at 7, 14). Lundeen recorded .2 hours for "receipt and review of correspondence concerning permanent injunction order." (*Id*. at 14). Lundeen more often recorded time using a .3 hour increment. (*Id*. at 7, 10, 14).

7

He recorded .3 hours for "receipt and review of email and photo from clients concerning Richmond/Greenbriar work," "receipt and review of court's scheduling order; calendar deadlines," "report scheduling order to client and send copy to expert witness," "telephone conference with Ken Otten's office," "receipt and review of email from client; send inquiry to Ken Otten," "receipt and review of amended scheduling order; report to client," "exchange emails with expert Ken Otten concerning report," "receipt and review of fax from opposing counsel Labove; check with expert on status of reports," "receipt and review of email from expert witness Ken Otten concerning expert report," "send email to law clerk concerning review of deposition transcripts," "check with Ken Otten on status of expert report (on 4/20/05, 4/20/05, and 4/22/05)," "receipt and review of new scheduling order extending time for defendants expert report," "receipt and review of correspondence from Ms.  Hansen (Metro) concerning expert field notes," "receipt and review of Otten invoice for services," "receipt and review of email correspondence with opposing counsel concerning permanent injunction order," and "exchange emails with expert Ken Otten concerning inspection of additional corners."  (*Id.*  at 5, 7, 8,10, 14, and 15).

Attorney David Dickinson did not use a consistent hourly increment.  For example, he recorded .50 hours for "Review of draft application for interim attorney's fees; provided comments to attorney in charge," "Review of status report filed by City of Houston for all defendants."  (*Id.* at 16, 17).  Dickinson recorded .25 hours for "E-mail to Don Fleming to inquire of status of damages to Permanent Injunction draft sent previously."  (*Id.* at 18).  He recorded some time using a .33 hour increment, including 1.33 hours for "cursory review of

filed pleadings in preparation for appearance at hearing on motion for temporary restraining order," "review City of Houston Brief in Opposition to Injunction; review of U.S. v. Morton cited in brief," and "prepare motion to enter judgment, certificate of conference and proposed form of Final Judgment." (*Id*. at 16, 17, and 18). Dickinson recorded 1.67 hours for "prepare for hearing and print color pictures for use in hearing; travel to and appear at hearing," and "review of outline and proposed form of injunction; conference with co-counsel on streamlining presentation of evidence at hearing including limiting the number of exhibits to be used." (*Id*. at 16). He recorded 3.33 hours for "review of metro responses, review of witness lists and outline of case from both defendants; cursory review of exhibit list of elements not previously disclosed; discussion with co-counsel regarding strategy for completion of trial preparation." (*Id*. at 16). Dickinson recorded 2.33 hours for "research in City of Houston Public Works Department website at suggestion of Daniel Krueger; download manuals and drawings for examination of Krueger regarding City policies of curb ramp replacement and repair." (*Id*. at 17). One of Dickinson's time entries was for .83 hours. (*Id*. at 18).

Attorney Marcee Lundeen recorded a total of 9 hours, in one block of 3 hours to "edit and revise bill of costs and supporting documentation; prepare exhibits to motion for attorney fees," and one of 6 hours to "prepare list of intersections." (*Id*. at 19).

The law clerks did not have many short time entries, though one law clerk, Jason Christensen, recorded .25 hours spent on "Review Metro's exhibit list for accuracy." (Docket Entry No. 163, Ex. A at 20). M. Jennifer Brown's shortest recorded time entry was

for .50 hours, "research applicable state and federal MUTCD code." (*Id.* at 20).  Dinniah Chain's shortest entry was for 1.00 hour, "Begin drafting Admissions to be presented to Metro and the City of Houston." (*Id.* at 19–20, 20–24, 25).  For longer tasks, the clerks appear to use a .25 hourly increment.  One clerk, Lindsay Duke, had few entries: one for 5 hours, three for 4 hours, two for 3 hours, one for 2.5 hours, one for 1.5 hours, and one for .5 hours for "Research and draft memo on recovery of attorney's fees and costs," "Research applicable statutory, regulatory, and case law regarding ADA compliance and traffic signal installation," "Draft memo regarding requirements for ADA compliance when installing traffic signal poles," "Research for motion for reconsideration of order." (*Id.* at 24).  Her work, except on fees, spanned multiple days.

The record does not show that the attorneys or law clerks in this case used a minimum or consistent ".30-.40" hourly increment in recording the time they spent on Jones's case. The record does not show that the increments used in recording time improperly inflated the fees sought.  The City's objection on this basis is overruled.

### C.    The Number of Hours

The City argues that Jones's counsel has not used appropriate billing judgment. (Docket Entry No. 166 at 5–7).  The City challenges the following hours as excessive:  145 hours spent to prepare for this court's October 2003 and December 2005 hearings, 74 hours spent in researching and writing the posthearing brief, and the work done by Brown, one of the law clerks.  (*Id.*).  The City  argues that the time should be reduced but does not specify by what amount.

10

Jones responds that the amount of time spent was reasonable for the nature of the tasks and the amount of work required.  Jones's counsel testified that before he filed the application for an attorneys' fee award, he reviewed the time records and removed hours for duplicative or unnecessary work and discounted other work to account for "the presence of defendants in the case who were dismissed before entry of judgment."  (Docket Entry No. 163, Ex. B at 2).  Both Dickinson and Lundeen testified that the number of hours spent to prepare for the hearings and posthearing brief were reasonable, given the complicated factual and legal issues.  Jones argues that Brown's work was needed on short notice to respond to the City's defenses and that the most cost-effective way to do the work was to assign it to a clerk.  (Docket Entry No. 167 at 13).

A review of the records supports Jones's arguments.  The legal issues in this case were unusual and complex.  The case involved a large number of intersections with curb and curb ramps that had been designed and constructed and repaired at different times and had varying degrees of deviation from the applicable standards.  Jones had to present and analyze  details such as steepness and pavement condition at different points of the curbs, curb ramps, and streets, at each of the intersections and corners.  The lengthy tables summarizing the evidence as to the condition of the street curbs and ramps at numerous intersections indicates the complexity and volume of the evidence that had to be presented and then analyzed in light of the law.  The hours for which fees are sought were reasonable to prepare for the hearings and to submit the posthearing brief.  The City's objections are overruled.

The City also argues that Jones failed to separate the time spent on her claims against

11

METRO—on which she did not prevail—from the time spent on her claims against the City. (Docket Entry No. 166 at 6).  The City argues that as a result, this court should discount the hours by "an appropriate percentage," which is not specified.  (*Id.*).  The City does not identify any specific time entry as inappropriate because it includes time spent on claims against METRO rather than the City.

Jones responds that her counsel carefully examined the time records and removed 76.2 hours that were for work on her claims against METRO.  (Docket Entry No. 167 at 13). Lundeen testified he reviewed the records and removed entries for time spent on work unrelated to the claims against the City.  Lundeen used discounting to adjust for the fact that the work for the claims against the City was often related to work on the claims against METRO.  (Docket Entry No. 163, Ex. B at 2).  The record shows a number of entries were discounted, some up to 60%.  (*Id.*, Ex. A).

Given the significant overlap in the issues in the claims against the City and against METRO, this court finds the billing judgment exercised to be reasonable.  Jones recognized the necessity of segregating time spent on pursuing claims against METRO from time spent pursuing claims against the City.  When the time entries were only for work on claims against METRO, Jones's counsel removed those entries from the fee calculation.  When the time entries were for work on interrelated claims against both METRO and the City, Jones's counsel used discounting to avoid including time spent on pursuing claims against METRO in the fee calculation.  The City has not identified time entries that should be further reduced or eliminated because they were for work pursuing claims on which Jones did not prevail.

The City's objection on this basis is overruled.  The number of hours included in the fee application is reasonable.

### D.    The City's Request for a Downward Adjustment for the Small Award of Actual Damages

The City argues that this court should reduce the lodestar amount based on the fact that Jones was awarded only $100 in statutory damages, far below the damages she sought. (Docket Entry No. 166 at 7). The City argues that a downward adjustment is justified to reflect that Jones has achieved "a very moderate level of success as to her request regarding the injunctive relief she sought" and "fell well short of her monetary demands."  (Docket Entry No. 166 at 8).

Jones responds that she obtained significant injunctive relief that resulted in new City policies for inspecting curb ramps in altered areas, installation of more than a hundred curb ramps, guidelines for facilities, 34 additional curb ramps, and a permanent injunction that applies to future street resurfacing.  (Docket Entry No. 167 at 5).  Jones argues that this case was "undesirable as reflected in the reluctance of experts to testify in this case."  (Docket Entry No. 163 at 6).  In her amended complaint, Jones asked for relief of "at least $100 per violation" under  section 121.004(b) of the Texas Human Resources Code.  (Docket Entry No. 19 at 15).  Jones later argued that this amount was properly calculated at $42,400. (Docket Entry No. 152).  This court awarded only $100, not because of a defect in Jones's case, but because this amount was the maximum the statute allowed.  (Docket Entry No. 158).

Citing to *Hyde v. Small*, 123 F.3d 583, 585 (7th Cir. 1997), the City argues that if a plaintiff's award "falls far short of the damages sought, the attorneys [sic] fees can be reduced for that failure to succeed more successfully." (Docket Entry No. 166 at 7). In that case, the court noted that fees are "likely to be zero in a case in which the plaintiff obtains only nominal damages (nowadays $1), as in all the cases we have cited, unless the case established an important precedent, decreed declaratory or injunctive relief, or otherwise conferred substantial benefits not measured by the amount of the damages award." 123 F.3d at 584. The record in the present case does show that significant injunctive relief was obtained, providing significant benefits to Jones and other disabled citizens not measured by the nominal actual damages awarded. *See Farrar v. Hobby*, 506 U.S. 103, 115 (1992) ("[T]he most critical factor in determining the reasonableness of a fee award is the degree of success rewarded.").

The record does not show that the level of success or other *Johnson* factors support increasing or decreasing the lodestar amount.

### E.    Jones's Request for an Upward Adjustment for a Contingency Agreement

Jones's attorneys request an "upward contingency adjustment of 20%," noting that this case was "inherently in the public interest." (Docket Entry No. 163 at 5). In *City of Burlington v. Dague*, 505 U.S. 557 (1992), the Supreme Court analyzed a similar request. The Court ruled on a fee award under the Solid Waste Disposal Act's fee-shifting provision, which allows an award of the "costs of litigation (including reasonable attorney . . . fees )" to a "prevailing or substantially prevailing party." *Id.* at 561–62 (citing 42 U.S.C. § 6972(e)).

14

The Court noted that this language was "similar to that of many other federal fee-shifting statutes." *Id.* at 562. The prevailing party sought a "contingency enhancement" to the lodestar fee. The Court rejected the request. The Court stated that an:

> enhancement for contingency would likely duplicate in substantial part factors already subsumed in the lodestar. The risk of loss in particular case (and, therefore, the attorney's contingent risk) is the product of two factors: (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits. The second factor, however, is ordinarily reflected in the lodestar—either in the higher number of hours expended to overcome the difficulty, or in the higher hourly rate of the attorney skilled and experienced enough to do so. Taking account of it again through lodestar enhancement accounts to double counting.

*Id.* at 562–63 (citations omitted). The Court explained that the first factor, the relative merits of the claim, should not be included in calculating the fee award because it is a factor that always exists – "no claim would has a 100% chance of success" – which meant that "computation of the lodestar would never end the court's inquiry in contingent-fee cases." *Id.* at 567. The Court held that "enhancement for contingency is not permitted under the fee-shifting statutes at issue." *Id.*; *see also Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1057 (5th Cir. 1998) ("Although the contingent nature of the fee arrangement may be considered in determining whether to reduce the lodestar, a lodestar enhancement cannot be based on that factor.").

No enhancement of the lodestar fee for contingency or *Johnson* factor is warranted in this case. The lodestar amount is a reasonable and adequate fee for the time and work Jones's lawyers expended in this case.

15

### E.    Litigation Expenses:  Expert Fees

The City objects to the including in the fee award the costs for Kristi Thomas and Kenneth Otten, who served as experts for Jones.  (Docket Entry No. 166 at 8).  None of the City's arguments support excluding these fees.

The City argues that Thomas did not testify in court, but the record does not support this argument.  Thomas testified in court on October 22, 2003.  (Docket Entry No. 43).

The City also argues that only the costs of court-appointed experts can be awarded. (Docket Entry No. 166 at 8–9).  The City cites to several cases, but none is a case under the ADA.  (*Id.*)  The ADA authorizes a court to award attorneys' fees, litigation expenses, and costs to a prevailing party.  *See* 42 U.S.C. § 12205; 28 C.F.R. § 35.175.  The preamble to the ADA states that "[l]itigation expenses include items such as expert witness fees, travel expenses, etc." 28 C.F.R. Pt. 35, App. A, Section-by-Section Analysis, § 35.175; *see also* H.R. 101-485(III) at 73, reprinted in 1990 U.S.C.C.A.N. 445, 496 ("Litigation expenses include the costs of expert witnesses. This provision explicitly incorporates the phrase 'including litigation expenses' to respond to rulings of the Supreme Court that items such as expert witness fees, travel expenses, etc., be explicitly included if intended to be covered under an attorney's fee provision.").  Awarding expert witness fees to a party prevailing under the ADA is also supported by the ADA's legislative history.  *Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002); *Hall v. Clausen*, 6 Fed. App'x. 655, 681 (10th Cir. 2001) (noting incorporation of Civil Rights Act procedures into the ADA, including expert witness fees).

16

The City's objection to including the expert-witness fees in litigation expenses is overruled.

## II.    Costs

In her bill of costs, Jones included the following:  $150 for filing fees; $560 in service and subpoena fees; $3,691.79 in court reporter fees; $960.54 in printing fees; $300 in witness fees; and $1,023 in other fees, for a total of $6,686.19.  The City objected to $3,257.10 of the taxed costs and filed a motion to retax.  (Docket Entry No. 164, 165).  The City challenged the following costs:  witness and subpoena fees for P. Russell,  L. Rowe, and Eugene Smith ($150); copying and printing ($960.54); delivery charges ($997.40) and postage expenses ($26.46); and the deposition costs for Eugene Smith, Jr. ($1,122.70).

Jones argues that the motion to retax the costs is "untimely since it was filed after costs have already been taxed."  (Docket Entry No. 169 at 1).  Local Rule 54.2 requires that any objections to costs must be filed within five days of the bill being filed. S.D. TEX. LOCAL R. 54.2.  Federal Rule of Civil Procedure 54(d)(1) permits a party to file objections within five days of the clerk's taxing costs.  ("Such costs may be taxed by the clerk on one day's notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court."); *see also Marchman v. NationsBank Tex.*, 108 F.3d 333 (5th Cir. 1997) (per curiam).  In this case, the bill of costs was entered on January 30, 2007, and the clerk taxed the costs on February 2, 2007.  (Docket Entry No. 162).  The City filed its objections on February 2, 2007 and filed a motion to retax consistent with those objections on February 6, 2007.  (Docket Entry Nos. 164, 165).  The motion was timely.

17

Rule 54(d) (1) of the Federal Rules of Civil Procedure provides that "costs, other than attorneys' fees shall be allowed as of course to the prevailing party unless the district court otherwise directs." There is a strong presumption under Rule 54(d)(1) that the prevailing party will be awarded costs. *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 586 (5th Cir. 2006). Title 28 U.S.C. § 1920 allows the following categories of costs:

> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. Rule 54(d)(1) does not authorize a court to award costs not included in the statute. *Crawford Fitting Company v. J.T. Gibbons, Inc.*, 107 S.Ct. 2494, 2497 (1987).

Each of the challenged cost items is analyzed below.

### A.      Witness and Subpoena Fees for P. Russell,  L. Rowe, and E. Lloyd Smith ($150)

The City challenges these witness and subpoena fees as either not allowed under 28 U.S.C. § 1920 or not incurred in connection with the litigation.

The City argues that Russell did not appear in court. Jones responds that Russell was subpoenaed to appear as an adverse witness at the evidentiary hearing held on December 8, 2005. Russell was subpoenaed to authenticate documents that Jones intended to offer into

evidence over the City's objections.  (Docket Entry No. 169 at 1).  Russell attended the hearing but did not testify because the City withdrew its objections to the documents.  (*Id*. at 1–2).  The record substantiates the costs taxed for witness and subpoena fees for Russell.

The City argues Rowe did not appear in court.  Rowe appeared and testified at the evidentiary hearing held on October 27, 2003 about the design standards applicable to curbs and ramps under the ADA Accessibility Guidelines (ADAAG).  (*Id*. at 2).  The record substantiates the costs taxed for witness and subpoena fees for Rowe.

The City argues that the witness fees for Smith cannot be recovered because he was an expert who appeared for Jones in connection with her claims against METRO rather than the claims against the City.  Smith works for METRO.  He testified as to which entity was responsible for signal, street, sidewalk, curb, and curb ramp alterations in the Spur 527 area, where both the City and METRO were performing construction and repair work.  (*Id*. at 2).  Jones responds that Smith's testimony would have been necessary even if METRO had not been party to this lawsuit.  (*Id*.).  Again, the record supports Jones's argument.  The  issue of which entity—the City or METRO—was responsible for different aspects of the work relating to the Spur 527 project was important to determining liability.  The costs for securing Smith's testimony are recoverable.

This court find that all three witnesses were necessary in Jones's case against the City.  The City's objections to the $150 in witness and subpoena fees are overruled and the motion to retax based on these objections is denied.

**B.     Copying and Printing Costs ($960.54), Delivery Costs ($997.40), and**

### Postage Expenses ($26.46)

The City argues that Jones has not shown that the copying and printing costs were for papers used in the litigation   (Docket Entry No. 164 at 2).  Under 28 U.S.C. § 1920, "disbursements for printing" and "fees for exemplification and copies of papers necessarily obtained for use in the case" are taxable costs.  Although the invoice for those costs is not detailed, Jones's attorney submitted an affidavit stating that the printing costs were necessary.  (Docket Entry No. 162 at 1, 8).  These costs are recoverable.

The City argues that delivery and postage costs cannot be recovered under 28 U.S.C. § 1920.  Jones responds that "[t]o the extent such costs may not be fully appropriate under 28 U.S.C. § 1920, they are nonetheless recoverable litigation expenses under 42 U.S.C. § 12205 and 28 C.F.R. § 35.175."  (Docket Entry No. 169 at 2–3).  Delivery costs are not listed in 28 U.S.C. § 1920.  Delivery costs are generally not awarded without additional support in the record.  *See, e.g., Williams v. Thresholds, Inc.*, 2003 WL 22478784, at *2 (N.D. Ill. Oct. 31, 2003) ("Under the Judicial Conference guidelines, delivery costs are considered ordinary business expenses and are not chargeable in relation to obtaining transcripts."); *E.E.O.C. v. Allied Systems, Inc.*, 1999 WL 395377 (N.D.N.Y. June 9, 1999) (citing *Massachusetts Fair Share v. Law Enforcement Assistance Administration*, 776 F.2d 1066, 1069 (D.C. Cir.1985)).  In *Corder v. Lucent Technologies Inc.*, 162 F.3d 924 (7th Cir. 1998), the district court awarded delivery costs, finding that the case schedule required expedited delivery of transcripts, and the Seventh Circuit affirmed.  *Id.* at 928–29.  In this case, the record does not provide similar support for awarding delivery costs.

Postage costs are not listed in section 1920 and generally courts do not include them in taxable costs. *See, e.g, Noel Studio, Inc. v. Ewell*, 2006 WL 3317095 (E.D. Tex. Oct. 30, 2006). Rather, a specific showing of need is required. *See, e.g., Northeast Iowa Citizens For Clean Water v. Agriprocessors, Inc.*, 2007 WL 1642477 (N.D. Iowa June 6, 2007) (awarding express mail fees under the Clean Water Act). No such showing is presented here.

The City's objection to Jones's inclusion of $997.40 in delivery costs and $26.46 in postage costs is granted and the motion to retax granted to that extent.

### C.     Deposition of Eugene Smith, Jr. ($1,122.70)

The City renews its argument that Smith's testimony was only in connection with Jones's claims against METRO. (Docket Entry No. 164 at 2). Jones responds that Smith's testimony, or the testimony of another METRO employee, would have been required even if METRO had not been a party. (Docket Entry No. 169 at 2). Smith was a necessary witness in Jones's case against the City to provide evidence as to the allocation of responsibility for the street and sidewalk work at issue. The City's objection to the deposition costs in the amount of $1,122.70 is overruled and the motion to retax these costs is denied.

The City's motion to retax the bill of costs is granted in part to remove the delivery charges ($997.40) and postage expenses ($26.46).

## III.    Conclusion and Order

The City's motion to retax Jones's bill for costs is granted in part to remove delivery charges ($997.40) and postage expenses ($26.46). (Docket Entry No. 165). The remainder

of the costs are allowed, in the amount of $5,682.33.  Jones's application for attorneys' fees is granted with no adjustment of the lodestar  amount.  (Docket Entry No. 163).  Jones is awarded fees in the amount of $265,769.15.

SIGNED on August 22, 2007, at Houston, Texas.

Lee H. Rosenthal
United States District Judge